Filed 5/1/14  Smith v. Spight Property II CA1/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| KEVIN SMITH et al., <br><br>        Plaintiffs and Appellants, <br><br> v. <br><br> SPIGHT PROPERTY II, LLC et al., <br><br>        Defendants and Respondents. | A111543 <br><br> (Contra Costa County <br> Super. Ct. No. C04-00532) |

**I.**

**INTRODUCTION**

Appellants Kevin Smith and Lucienne Hunter, appearing in propria persona as they did in the trial court, were declared vexatious litigants and required to furnish $250,000 security in order to proceed with their lawsuit against respondents.  The trial court also subjected appellants to a prefiling order under Code of Civil Procedure section 391.7[1] prohibiting them from filing any new litigation in propria persona without first obtaining court permission.  Appellants' lawsuit was eventually dismissed after they repeatedly failed to "state coherent and legal[ly] sufficient claims" against respondents.

---

[1] All further undesignated statutory references are to the Code of Civil Procedure.

1

Appellants' opening brief challenging these determinations violates numerous rules of court, including California Rules of Court, rule 8.204(a)(2)(C)[2] requiring "a summary of the significant facts limited to matters in the record," and rule 8.204(a)(1)(C) requiring any reference to a matter in the record be supported by a "citation to the volume and page number of the record where the matter appears." On this basis, alone, we would be fully justified in rejecting appellants' appeal and in affirming the dismissal of this case.

Despite the procedural grounds warranting affirmance, we have, however, reviewed the record, and conclude the trial court's determination that appellants are vexatious litigants who must obtain a prefiling order before commencing further litigation is supported by substantial evidence. We also conclude the court did not abuse its discretion in ordering appellants to post $250,000 in security in order to proceed with this litigation, and that the trial court's dismissal of this case was proper. Therefore, we affirm the trial court's orders on their merits.

## II.

## FACTS AND PROCEDURAL HISTORY

We need not provide a detailed recitation of the facts underlying this case to reach our results in this appeal. Briefly, on December 31, 2001, respondent Spight Property II, LLC (Spight) purchased undeveloped property in Cloverdale, California. When Spight acquired the property, there were more than 25 commercial coaches (modular structures on wheels) on the property belonging to appellants. In 2002, Spight filed an unlawful

---

[2] All rule references are to the California Rules of Court. An order determining a party to be a vexatious litigant an requiring the posting of security under section 391.3 is not directly appealable. However, an appeal lies from the subsequent order or judgment of dismissal. (*Childs v. PaineWebber, Incorporated* (1994) 29 Cal.App.4th 982, 985, 988, fn. 2; *Roston v. Edwards* (1982) 127 Cal.App.3d 842, 846.) Appellants have appealed from the order of dismissal. Consequently, the trial court's determinations declaring them to be vexatious litigants and requiring them to post security are properly reviewable in this appeal.

detainer action against appellants to have them move the "old and seemingly abandoned" commercial coaches from the property.

Despite their agreement to do so, appellants failed to move the commercial coaches. The judge who heard the unlawful detainer action signed an order after hearing on February 20, 2003, which provided "that [respondents'] personal property on the Cloverdale Property shall be disposed of by [appellants] pursuant to Civil Code section 1983 et seq." During the next year, appellants did not move the commercial coaches from the property.

Appellants filed this lawsuit on March 26, 2004, alleging 21 causes of action related to the abandoned commercial coaches. Their legal theories and the facts allegedly supporting these theories are difficult to decipher. However, their opening brief offers the following synopsis of their grievances against respondents: "[Respondents] entered into a leased property, forcibly removed appellants [*sic*] equipment from said property, moved it to an entirely different parcel which they claim to be better for appellants because it is highly visible (from U.S. 101) . . . ." Respondents allegedly "damaged [appellants'] equipment and placed them [*sic*] in a highly visible location, which caused [appellants'] equipment to be subject to vandalism." Appellants acknowledge, "Perhaps, the complaint Appellants filed was burdensome, but after everything that respondents had done to destroy [their] business, it seemed necessary to allege each and every one of Respondents [*sic*] egregious actions."

The lower court sustained respondents' demurrers to appellants' original complaint, with leave to amend. Appellants filed their first amended complaint on July 1, 2004. Respondents again demurred. The demurrers were again sustained with leave to amend. The second amended complaint (SAC) was filed on September 13, 2004, alleging 20 causes of action. Respondents again demurred to the SAC.

Respondents then filed a motion to have appellants declared vexatious litigants. Respondents contended appellants met the statutory definition of "vexatious litigant[s]" because they had commenced, prosecuted, or maintained in propria persona at least five litigations in the preceding seven years (§ 391, subd. (b)(1)) and had, while acting in

3

propria persona in litigation, repeatedly filed unmeritorious motions, pleadings or other papers, conducted unnecessary discovery, or engaged in other tactics that were frivolous or solely intended to cause unnecessary delays (§ 391, subd. (b)(3)). The motion was supported by declarations as well as voluminous pleadings and dockets from many lawsuits filed or maintained by appellants. Respondents further submitted evidence of the attorney fees already expended in defending this action and a projection of fees likely to be incurred if the litigation was permitted to proceed.

The lower court sustained respondents' demurrers to the SAC on the basis that it failed to allege sufficient facts to state any cause of action, and that the SAC was "still so uncertain that [respondents] cannot reasonably determine what claims are directed against which [respondents]." The lower court simultaneously ordered the action stayed pursuant to section 391.6, until respondents' vexatious litigants motion could be heard. The order further set a deadline for the filing of an amended complaint ". . . if, at the hearing [on the vexatious litigants motion], the court permits [appellants] to file an amended complaint . . . ."

Respondents' motion to declare appellants vexatious litigants was heard and granted on March 2, 2005. The order stated appellants either prosecuted or maintained 20 actions over the past seven years which had either been (a) finally determined adversely to them, or (b) unjustifiably permitted to remain pending for at least two years without having been brought to trial or hearing. Further, appellants repeatedly filed "unmeritorious motions" and engaged in "other tactics that [were] frivolous or solely intended to cause unnecessary delay." The court ordered appellants to furnish security in the amount of $250,000 to be filed with the clerk of the court for respondents' anticipated legal expenses. The court also concluded the evidence "clearly indicates the need for [a prefiling order]" which would prevent appellants "from filing any new litigation in the courts of this state in propria persona without first obtaining leave of the presiding judge of the court . . . ."

The court then generously gave appellants until April 1, 2005, to file a motion for leave to file a third amended complaint (TAC) that stated "coherent and legally sufficient

4

claims," and to seek modification of the amount of the security "if valid causes of action could be presented." On April 1, 2005, appellants filed a "Motion for Order Granting Leave to Amend the Complaint and for Hearing to Exonerate the Bond or Alternatively to Reduce the Bond Amount." The motion attached a proposed TAC consisting of 13 causes of action and was accompanied by appellant Smith's declaration, which stated that appellants would ". . . address the amount of the bond and the reasons for its reduction" at the hearing. No memorandum of points and authorities was filed with the motion. The hearing was set for June 8, 2005, but was continued by stipulation to June 22, 2005. Almost two months later, appellants filed a lengthy "memorandum of points and authorities," to which respondents objected.[3]

The court issued a tentative ruling denying appellants' motion to once again amend the complaint and ordering the case dismissed with prejudice. Appellants intended to contest this tentative ruling at the hearing scheduled for June 22, 2005, but failed to timely appear. At the hearing, the court checked its voicemail and determined that appellants had left a message stating they were in traffic and running late. The trial court observed that appellants were ". . . well aware of their responsibility to be here and to be here on time. I am not going to require counsel to remain here and wait upon [appellants] Miss Hunter and Mr. Smith's deciding to show up, nor am I going to keep counsel waiting on the trial matter. [¶] My tentative [ruling] is confirmed as the order of the court."

The court's written order dismissing this case with prejudice states: "[Appellants] have still failed to convince the court that they may prosecute a viable action. Despite repeated admonishments from this court and repeated assurances from [appellants] that they could amend their pleadings to conform to legal requirements, the [TAC] is essentially a repetition of the allegations in previous complaints, with only superficial changes. . . . [Appellants] still fail to allege, and are apparently incapable of alleging, a

---

[3] The trial court did not consider appellants' points and authorities, noting appellants "failed to obtain leave of court for late submission."

valid lease agreement with any of the [respondents] and have not shown that any [respondents] had any duty to protect the trailers they left on [respondents'] property."

Appellants filed a motion for reconsideration on July 5, 2005, seeking reconsideration of the court's decision not to wait for appellants to arrive at the hearing before making its ruling. Appellants filed a notice of appeal on August 22, 2005, prior to the hearing on the motion for reconsideration. The court denied the motion for reconsideration, finding that appellants failed to present any new facts of evidentiary significance or new law in support of the motion.

At the hearing on respondents' request for attorney fees as the prevailing party under Civil Code section 1717[4], appellant Hunter represented that she had just filed for bankruptcy (U.S. Bkrptcy. Ct., Case No. 05-44566-EDJ13), so the matter must be stayed and no attorney fees motion could be awarded. However, appellant Hunter admitted that appellant Smith was not a party to the bankruptcy filing. On September 1, 2005, an attorney fees award in favor of respondents was entered against appellant Smith alone, in the amount of $75,000.

While the bankruptcy action remained pending, this appeal was stayed. On June 4, 2012, appellants filed a status report indicating that all bankruptcies that would have affected this appeal were closed. On June 6, 2012, this court issued an order indicating "the stay of this appeal is now lifted" and set a briefing schedule. The matter is now fully briefed and ready for resolution.[5]

---

[4] Where attorney fees are provided for by contract, the prevailing party is entitled to attorney fees. (Civ. Code, § 1717.) The prevailing party is "the party who recovered a greater relief in the action on the contract." (*Id*. at subd. (b)(1).) A defendant who obtains a dismissal with prejudice is a prevailing party. (§ 1032, subd. (a)(4); *Adler v. Vaicius* (1993) 21 Cal.App.4th 1770, 1776.)

[5] On October 31, 2005, Acting Presiding Justice William R. McGuiness signed an order allowing this appeal to proceed.

6

## III.

## DISCUSSION

### A.  General Rules of Appellate Review

As respondents emphasize, there are black-letter rules of appellate review that have largely been ignored by appellants.  The fact that appellants are appearing in propria persona does not exempt them from these requirements.  A litigant has a right to act as his or her own attorney but, in so doing, should be restricted to the same rules of evidence and procedure as is required of those qualified to practice law before our courts.  Otherwise, ignorance is unjustly rewarded.  (*Harding v. Collazo* (1986) 177 Cal.App.3d 1044, 1055-1056.)

#### 1.  *Appellate Record*

First, appellants have the burden of providing an adequate record on appeal.  (*Hernandez v. California Hospital Medical Center* (2000) 78 Cal.App.4th 498, 502.)  " 'A necessary corollary to this rule is that if the record is inadequate for meaningful review, the appellant defaults and the decision of the trial court should be affirmed.' [Citation.]"  (*Gee v. American Realty & Construction, Inc.* (2002) 99 Cal.App.4th 1412, 1416.)  In other words, "[w]here [appellant] fails to furnish an adequate record of the challenged proceedings, his claim on appeal must be resolved against him.  [Citations.]"  (*Rancho Santa Fe Assn. v. Dolan-King* (2004) 115 Cal.App.4th 28, 46.)

Appellants chose to proceed by filing an appellants' appendix.  Under rule 8.124(b)(1)(B), an appendix must contain all documents "necessary for proper consideration of the issues, including, for an appellant's appendix, any item that the appellant should reasonably assume the respondent will rely on."  Appellants' appendix consists of three volumes containing a hodgepodge of documents, many of which are incomplete.  We cannot ascertain whether most of the documents contained in the appellant's appendix were part of the record below.  The appendix is not in any discernible order and is confusing and disorganized.  Consequently, the appendix violates rule 8.144(a)(1)(C), because it fails to arrange documents chronologically.

7

Appellants' appendix also fails to include many of the relevant documents that were filed by respondents in the trial court. For example, this appeal is primarily taken from the trial court's order declaring appellants vexatious litigants and the subsequent dismissal of this case after appellants failed to post security. Nevertheless, appellants' appendix does not include the exhibits attached to respondents' motion to declare appellants vexatious litigants, including respondents' appendices A through M and the many hundreds of pages of court documents referenced in those appendices. Because the superior court relied upon these documents in granting the vexatious litigant motion, appellants should have reasonably assumed that respondents would rely on those moving papers in this appeal. These documents are clearly necessary for the proper consideration of the issues in this appeal.

If we did not have a complete clerk's transcript, which includes all of the documents filed in connection with respondents' vexatious litigant motion, our opinion would end here. The only reason we are able to review the matter on its merits is because the clerk's transcript provides a complete picture of the proceedings below; and respondents have taken the time and effort to prepare a thorough response to this appeal with appropriate references to the clerk's transcript, which has greatly assisted this court in responding to appellants' arguments.

### 2. *Appellate Briefing*

An appellate brief must: (1) state each point under a separate heading or subheading summarizing the point; (2) support each point by argument and, if possible, by citation of authority, and (3) see that every factual reference is supported by a citation to the appellate record. (Rule 8.204(a)(1)(B), (C).)

"To demonstrate error, appellant must present meaningful legal analysis supported by citations to authority and citations to facts in the record that support the claim of error. [Citations.]" (*In re S.C.* (2006) 138 Cal.App.4th 396, 408.) "[C]onclusory claims of error will fail." (*Ibid.*) We are entitled to disregard factual assertions and legal arguments for which proper support is not provided. (*Grant-Burton v. Covenant Care,*

8

*Inc.* (2002) 99 Cal.App.4th 1361, 1379 [regarding unsupported factual assertions]; *People v. Stanley* (1995) 10 Cal.4th 764, 793 [regarding unsupported legal arguments].)

In many respects, appellants' brief is akin to the brief in *Richmond Redevelopment Agency v. Western Title Guaranty Co.* (1975) 48 Cal.App.3d 343, which the court described as "nothing more than what amounts to a random and somewhat garbled recital of alleged grievances . . . ." (*Id.* at p. 347.) Appellants throw out assertions of law and fact without citation to authority. Their brief consists of an ambiguous, rambling narrative full of charges and conclusory allegations against respondents, including that they "wrecked" appellants' "business livelihood." Appellants repeatedly claim that "to this day" they "do not understand why Respondents turned down [appellants'] reasonable [settlement] offer . . . ."[6]

For the foregoing reasons, we will treat as forfeited all of the assertions that are not set forth in a separate heading and are not supported by at least some measure of appropriate argument or authority. (*Mansell v. Board of Administration* (1994) 30 Cal.App.4th 539, 545-546; *Troensegaard v. Silvercrest Industries, Inc.* (1985) 175 Cal.App.3d 218, 228.) With that explanation, we will address the main arguments that appellants appear to be making.

## B. Law Applicable to Vexatious Litigants

The vexatious litigant statutes (§§ 391-391.7) were enacted in 1963 to curb misuse of the court system by those acting in propria persona who file meritless litigation and/or repeatedly re-litigate the same issues. Such activity does violence to judicial economy and prejudices those with valid legal issues from obtaining timely resolution of their claims. (*In re Bittaker* (1997) 55 Cal.App.4th 1004, 1008; *In re Whitaker* (1992) 6 Cal.App.4th 54, 57; *First Western Development Corp. v. Superior Court* (1989) 212 Cal.App.3d 860, 870.)

---

[6] In reply, respondents explain they believe appellants' lawsuit was "frivolous" and they "were well within their rights to refuse to settle such a case."

9

" 'Vexatious litigant' means a person who does any of the following:  [¶] (1) In the immediately preceding seven-year period has commenced, prosecuted, or maintained in propria persona at least five litigations other than in a small claims court that have been (i) finally determined adversely to the person or (ii) unjustifiably permitted to remain pending at least two years without having been brought to trial or hearing.  [¶] (2) After a litigation has been finally determined against the person, repeatedly relitigates or attempts to relitigate, in propria persona, either (i) the validity of the determination against the same defendant or defendants as to whom the litigation was finally determined or (ii) the cause of action, claim, controversy, or any of the issues of fact or law, determined or concluded by the final determination against the same defendant or defendants as to whom the litigation was finally determined.  [¶] (3) In any litigation while acting in propria persona, repeatedly files unmeritorious motions, pleadings, or other papers, conducts unnecessary discovery, or engages in other tactics that are frivolous or solely intended to cause unnecessary delay.  [¶] (4) Has previously been declared to be a vexatious litigant by any state or federal court of record in any action or proceeding based upon the same or substantially similar facts, transaction, or occurrence."  (§ 391, subd. (b).)

The vexatious litigant statutes provide two remedies.  The first is an order to furnish security under section 391.3.  This remedy is obtained by bringing a motion under section 391.1, which requires a determination that the plaintiff is a vexatious litigant, and that "there is not a reasonable probability that the plaintiff will prevail [on the merits]." (§ 391.3.)  If the security is not posted, the action "shall be dismissed as to the defendant for whose benefit it was ordered furnished."  (§ 391.4; *Holcomb v. U.S. Bank Nat. Assn.* (2005) 129 Cal.App.4th 1494, 1499 (*Holcomb*).)

"Another remedy is found in section 391.7, which authorizes the court to 'enter a prefiling order which prohibits a vexatious litigant from filing any new litigation in the courts of this state in propria persona without first obtaining leave of the presiding judge of the court where the litigation is proposed to be filed.'  (§ 391.7, subd. (a).)  The presiding judge may allow the filing of the new litigation 'only if it appears that the

10

litigation has merit and has not been filed for the purposes of harassment or delay. The presiding judge may condition the filing of the litigation upon the furnishing of security for the benefit of the defendants as provided in Section 391.3.' (§ 391.7, subd. (b).) The Judicial Council maintains a record of all vexatious litigants in the state and distributes a list to the clerks of the court annually. (§ 391.7, subd. (e).) The remedy provided in section 391.7 is in addition to the other remedies provided by the vexatious litigant statutes. (§ 391.7, subd. (a).)" (*Holcomb*, *supra*, 129 Cal.App.4th at pp. 1499-1500, fns. omitted.)

### C. Trial Court's Determination Appellants Are Vexatious Litigants

In this appeal, appellants primarily challenge the court's order designating them "vexatious litigants," subjecting them to a prefiling order prohibiting them from filing future litigation without court permission, and requiring them to post $250,000 in security as a condition of continuing their litigation against respondents.

In making their arguments, appellants never cite the proper standard of review. Furthermore, they argue the matter as if this court makes a de novo reconsideration of respondents' motion to have appellants declared vexatious litigants. Instead, our standard of review is well established. "A court exercises its discretion in determining whether a person is a vexatious litigant. [Citation.] We uphold the court's ruling if it is supported by substantial evidence. [Citations.] On appeal, we presume the order declaring a litigant vexatious is correct and imply findings necessary to support the judgment. [Citation.]" (*Bravo v. Ismaj* (2002) 99 Cal.App.4th 211, 219; *Holcomb*, *supra*, 129 Cal.App.4th at pp. 1498-1499.)

Under the substantial evidence standard of review, " 'the power of an appellate court *begins* and *ends* with the determination as to whether there is any substantial evidence, contradicted or uncontradicted, which will support the finding of fact. [Citations.] [¶] When two or more inferences can reasonably be deduced from the facts, a reviewing court is without power to substitute its deductions for those of the trial court.'. . ." (*Scott v. Common Council* (1996) 44 Cal.App.4th 684, 689, quoting *Green*

11

*Trees Enterprises, Inc. v. Palm Springs Alpine Estates, Inc.* (1967) 66 Cal.2d 782, 784-785, original italics.)

Properly focused, respondents submitted more than enough evidence to establish appellants met the statutory requirements set out by section 391 to be declared vexatious litigants. Judge Terence L. Bruiniers deemed respondents' evidence "compelling." He found "[a]ppendices A-M submitted by [respondents] provide a detailed synopsis of the unmeritorious motions and other dilatory tactics used by [appellants]." This evidence revealed appellants "have either prosecuted or maintained twenty (20) actions over the past seven years which have either been (a) finally determined adversely to the person or (b) unjustifiably permitted to remain pending at least 2 years without having been brought to trial or hearing. There are multiple other actions filed over 7 years ago."

Judge Bruiniers found appellants failed to submit any "meaningful" evidence in opposing the motion, relying instead on their own declarations, which offered excuses and explanations, but did not meaningfully refute the evidence presented. The court concluded that the evidence was sufficient to support an order requiring appellants to post $250,000 as a condition of proceeding in the litigation against respondents and to subject them to prefiling requirements for any new litigation they may file.[7]

On appeal, appellants claim that "[i]f the court had actually looked into the cases presented, the evidence is overwhelming that appellants try over and over to work with people with whom they have a disagreement before they litigate and that it [*sic*] at all possible they settle." However, this argument is undercut by a review of the material in support of respondents' vexatious litigants' motion, which reveals a considerable history of vexatious litigation. Appellants have been called "virtual litigation machines, causing every opponent to incur massive fees, due to their litigation strategies." The record

---

[7] On August 19, 2013, we reserved for consideration with this appeal appellants' request for judicial notice of several documents appellants claim are relevant to the court's finding they are vexatious litigants. We deny the request for judicial notice because the documents were not before the trial court when it made its ruling. (*Vons Companies, Inc. v. Seabest Foods, Inc.* (1996) 14 Cal.4th 434, 444, fn. 3.)

before us bears out that description and substantiates respondents' claim that appellants "effectively manage their litigation by claiming cancer, inability to retain counsel, bankruptcy, spinal injury, auto accident, 'family emergencies,' throat surgeries and a plethora of Notices of Bankruptcy and Notices of Unavailability."

In short, the record overwhelmingly shows appellants meet the statutory definition of vexatious litigants because they have established a pattern of misusing the courts of this state, and of wasting precious time and resources of the opposing parties and the judicial system. (See *Shalant v. Girardi* (2011) 51 Cal.4th 1164, 1169.) Appellants' self-serving explanations and excuses on appeal do not demonstrate that the lower court erred in declaring them vexatious litigants, requiring them to post security for the litigation to proceed, and entering a prefiling order prohibiting them from filing new litigation in propria persona without court permission.

### D. Motion for Reconsideration

Appellants also challenge the denial of their motion for reconsideration. That motion asked the trial court to reconsider its ruling denying appellants' motion requesting permission to file their TAC, and to exonerate, or alternatively to reduce, the amount of security to proceed with this litigation. When appellants failed to appear for the hearing on this motion, the trial court proceeded to adopt its tentative ruling denying the motion and dismissing this case. In seeking reconsideration of this ruling, appellants claim they were unlawfully deprived of a meaningful opportunity to be heard.

Citing a number of cases decided prior to 2012, respondents first claim that orders denying a motion for reconsideration are not appealable. It is true that prior to 2012, there was a split in decisional authority over whether an order denying a motion for reconsideration under section 1008 was separately appealable. As the court noted in *Powell v. County of Orange* (2011) 197 Cal.App.4th 1573 (*Powell*), "[t]he majority of courts addressing the issue have concluded an order denying a motion for reconsideration is not appealable, even when based on new facts or law. [Citations.]" (*Id.* at pp. 1576-1577.)

13

However, an amendment to section 1008, subdivision (g), effective January 1, 2012, has since clarified that "[a]n order denying a motion for reconsideration made pursuant to subdivision (a) is not separately appealable. However, if the order that was the subject of a motion for reconsideration is appealable, the denial of the motion for reconsideration is reviewable as part of an appeal from that order." (§ 1008, subd. (g); see Assem. Bill No. 1067 (Reg. Sess.2011–2012) § 1.) Thus, this amendment resolved the split in favor of the majority of courts that had concluded that: (1) an order denying a motion for reconsideration is not appealable, even when based on new facts and law, but (2) the denial of a motion for reconsideration is reviewable if the request for reconsideration is made from an appealable judgment or order. (*Powell*, *supra*, 197 Cal.App.4th at p. 1577.)

Considering the denial of appellants' motion for reconsideration as part of our appellate review of the dismissal of this lawsuit, we turn to the merits of the court's ruling. "A trial court's ruling on a motion for reconsideration is reviewed under the abuse of discretion standard. [Citation.]" (*Glade v. Glade* (1995) 38 Cal.App.4th 1441, 1457.) Section 1008 expressly prohibits the granting, or even consideration, of a motion for reconsideration unless it is "based upon new or different facts, circumstances, or law." (§ 1008, subds. (a), (e).) In addition, the moving party is generally required to show a satisfactory explanation for the failure to present those new or different facts or law earlier. (*McPherson v. City of Manhattan Beach* (2000) 78 Cal.App.4th 1252, 1265; *New York Times Co. v. Superior Court* (2005) 135 Cal.App.4th 206, 212.)

At the hearing on the reconsideration motion, appellants admitted that they were not seeking reconsideration of the court's ruling based on any new or different circumstances or law; but only wished to challenge the court's decision to go forward with the hearing in appellants' absence. In the court's written order denying appellants' motion for reconsideration, the court pointed out appellants "present[ed] no new facts of any evidentiary significance and no new law. [Appellants'] failure to timely appear for the previously scheduled hearing in this matter does not constitute a basis to reconsider the order . . . ."

14

On appeal, appellants' claim this ruling demonstrates the "Judge's obvious bias against Pro Per litigants." The court responded to this identical argument at the hearing on appellants' motion for reconsideration by making this oral ruling: "Now, I have heard you sit here and accuse the Court of being biased against you because you are pro pers, of failing to give you adequate consideration because you are pro pers. Whatever your feelings are on that, that I can't do anything about[.] [¶] But I think the record will reflect this Court has bent over backwards to give you different considerations, including additional time to amend your pleadings, when as far as I could see, you have engaged in exactly the same pattern of this conduct before this Court which resulted in the finding of being a vexatious litigant."

The court's remarks were justified. The record before us demonstrates the court exhibited extraordinary patience and restraint in allowing appellants to make several attempts to state a viable cause of action against respondents. No abuse of discretion has been demonstrated in the denial of appellants' motion for reconsideration.

### E. Trial Court's Award of Attorney Fees

Finally, appellants argue that respondents were not entitled to recover $75,000 in attorney fees awarded by the trial court. They claim the trial court's award of attorney fees is unwarranted and excessive because in preparing the vexatious litigant motion, respondents "ran up a very significant amount of those fees emailing, phoning and contacting those parties with whom Appellant [*sic*] had had prior litigation, despite the fact . . . the court records obtained in those matters should have been sufficient for their purpose." They also claim respondents "have included time spent in pursuing the ends of three prior cases they filed against Appellants, which they were unsuccessful at and which should not be included in this case's costs."

In response, respondents first argue appellants cannot challenge the court's attorney fee award as part of this appeal. They point out the court's September 1, 2005 order awarding respondents $75,000 in attorney fees postdated appellants' August 26, 2005 notice of appeal from the judgment dismissing their action. Respondents claim that

15

because "[a]ppellants never separately appealed the attorney's fees award . . . it is too late to do so now."

However, we note the judgment, which was timely appealed, indicates that respondents are entitled to recover their costs, and appellants' notice of appeal indicates appellants appeal "any post-judgment orders granting [respondents] costs and/or fees." Thus, we liberally construe the premature notice of appeal to be from the subsequent appealable order. (See rule 8.100(a)(2); *Grant v. List & Lathrop* (1992) 2 Cal.App.4th 993, 998 [when "a judgment awards costs and fees to a prevailing party and provides for the later determination of the amounts, the notice of appeal *subsumes* any later order setting the amounts of the award" (italics added)]; *R. P. Richards, Inc. v. Chartered Construction Corp.* (2000) 83 Cal.App.4th 146, 158 [same].)

The amount of attorney fees awarded is left to the discretion of the trial court. (*Abdallah v. United Savings Bank* (1996) 43 Cal.App.4th 1101, 1111.) Once again, appellants' arguments challenging the court's award of attorney fees as excessive are conclusory and unaccompanied *by even a single citation* to legal authority or the record. Such deficient argument is properly disregarded. (*In re S.C.*, *supra*, 138 Cal.App.4th at p. 408; *Grant-Burton*, *supra*, 99 Cal.App.4th at p. 1379.) Therefore, we reject appellants' challenge to the attorney fee award.

**F. Request for Sanctions**

Respondents argue they are entitled to sanctions because "the instant appeal is frivolous, lacks any merit, refers to an incomplete and improper Appendix and has been prosecuted solely for the purpose of harassing Respondents." Appellants do not respond to this argument.

Section 907 and rule 8.276(a)(1) provide for the awarding of sanctions by the reviewing court when the appeal is frivolous or taken solely for delay. "[A]n appeal should be held to be frivolous only when it is prosecuted for any improper motive—to harass the respondent or delay the effect of an adverse judgment—or when it indisputably has no merit—when any reasonable attorney would agree that the appeal is totally and completely without merit. [Citation.]" (*In re Marriage of Flaherty* (1982) 31 Cal.3d

16

637, 650.) However, an appeal that is simply without merit is not by definition frivolous. The borderline between a frivolous appeal and one which has no merit is vague, therefore the punishment for a frivolous appeal should be used most sparingly to deter only the most egregious conduct. (*Id.* at pp. 650-651.)

Although we have determined this appeal is without merit, we do not find the facts support a finding of egregious conduct justifying sanctions. We therefore decline to assess sanctions against appellants.

## IV.

## DISPOSITION

The judgment dismissing this action is affirmed. Respondents are entitled to recover their costs on appeal.

_____
RUVOLO, P. J.

We concur:

_____
REARDON, J.

_____
HUMES, J.

17